Esposito et al. *v.* Henderson et al., Appellant.

480

Argued October 8, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Harold M. Kominars,* with him *Albert C. Gekoski,* for appellant.

*Max E. Cohen,* with him *Henry Temin,* for Henderson, appellee.

OPINION BY HIRT, J., January 21, 1958:

The three appeals, before us from final judgments in the court below, relate to damages from the same ac-

cident which occurred between 9:00 and 10:00 p.m. on May 27, 1955. Gaetano Colonnese was driving his automobile south on Twelfth Street in Philadelphia; Frank Henderson was driving east on Carpenter Street. The cars collided in the right-angled intersection of the two streets. There was no stop sign or other traffic control. Colonnese sued Henderson (Appeal 303) for personal injuries and damages to his car; Henderson filed a counterclaim. Joseph Esposito, a passenger in Colonnese's car sued Henderson (Appeal 302) who brought in Colonnese as additional defendant. Henderson was sued also by Rocco Frumento, another passenger in Colonnese's car (Appeal 304) and Colonnese was brought in as an additional defendant in that case also. All three cases were consolidated for trial with the result that in No. 303 the verdict was for the defendant Henderson, and in his favor on his counterclaim for damages to his car against Colonnese in the sum of $802.50. In No. 304 the verdict was in favor of plaintiff Frumento against Colonnese, the additional defendant, alone, in the sum of $550. So also, in No. 302 the jury consistently found in favor of the defendant Henderson and for the plaintiff Esposito in the sum of $3,000 against Colonnese the additional defendant.

Colonnese's motions for a new trial in No. 303 and for judgments n.o.v. as additional defendant in Nos. 304 and 302 were overruled. Both Esposito and Frumento moved for new trials as to them in Nos. 302 and 304 on the ground alleged that the verdicts were inadequate. After argument on the motions, new trials were granted against Colonnese the additional defendant alone, but in awarding new trials the court limited the issues to the amount of damages only.

We find no merit in the appeals of Colonnese. Under the facts he clearly was chargeable with negligence.

Colonnese testified that in driving south on Twelfth Street at 20 to 25 miles an hour, he looked to his right at the house line (he later said it was at the curb line) as he approached Carpenter Street. His view was obstructed so that he could see only 50 to 60 feet to the west on Carpenter Street. Seeing nothing he admittedly didn't look again until he reached the center of the intersection and he said Henderson's car then "was on top of me" and "when I seen him it was too late for me to do anything." Both streets are 25 feet wide with 12 foot sidewalks and both were restricted to one-way traffic. Colonnese's own testimony convicts him of negligence in failing to exercise the high degree of care required of him, and to look and to see what was visible before attempting to cross the intersection. *Papkin et ux. v. Helfand and Katz*, 346 Pa. 485, 31 A. 2d 112; *Shapiro et ux. v. Grabosky*, 320 Pa. 556, 184 A. 83. Moreover, Henderson, who was driving east on Carpenter Street was approaching the intersection from Colonnese's right. Henderson therefore had the technical right-of-way and since they approached the intersection at about the same time it was Colonnese's duty to honor Henderson's superior right. *Podjed v. Wolfe*, 183 Pa. Superior Ct. 542, 133 A. 2d 256.

Henderson approached Twelfth Street from the west on Carpenter Street and he testified that when his automobile was about at the building line Colonnese was 150 to 200 feet away, approaching on Carpenter Street from his left, at a speed as estimated by him at 30 to 35 miles per hour. Henderson then drove into the intersection in low gear without again looking to his left. He had reached the middle of the trolley tracks on Twelfth Street when he saw Colonnese's car 70 feet away and "coming faster." Henderson said that Colonnese's car struck the left door and fender of his car. In view of Henderson's admitted failure

to continue to look for approaching traffic after his first observation, he narrowly escaped convicting himself of negligence as a matter of law. However, since Henderson approached the intersection from Colonnese's right, we are of opinion that the question of Henderson's negligence was one for the jury to resolve, although barely so. Cf. *Mathews v. Patton et al.*, 385 Pa. 625, 123 A. 2d 667; *Podjed v. Wolfe,* supra. Moreover from a reading of the charge of the trial judge as a whole, as we are bound to do (*Robinson et al., Admrs. v. P. T. C.*, 347 Pa. 288, 32 A. 2d 26; *Bollinger v. West Penn Power Co.*, 365 Pa. 599, 76 A. 2d 214) we are unable to say that there was error in the submission of the question of the negligence of either Colonnese or Henderson.

If the lower court had seen fit to grant new trials generally as to both defendants we would not be disposed to disturb its action. But in our view, under all of the circumstances the lower court clearly abused its discretion in granting new trials as to Esposito and Frumento against Colonnese alone, and in limiting the issue "to damages only."

The verdicts in favor of Esposito for $3,000 and for Frumento in the sum of $550 might have been larger but both were substantial and reflected the jury's appraisal of the evidence on damages. The proofs in each case depended largely on the testimony of the plaintiff himself, and without corroboration in some vital aspects. And particularly in cases such as these where the credibility of the injured parties was a highly important question and wholly for the jury, the award of new trials, limited exclusively to computation of the damages in terms of money, could hardly fail to produce an inequitable result. By court edict a new jury in the Esposito and Frumento cases would be precluded from inquiring into relevant circumstances which

strongly suggest that Henderson was concurrently negligent with Colonnese. The jury under the order would be obliged to proceed on the premise of Colonnese's negligence and would ignore all of the evidence tending to negative his sole responsibility. This approach would result in an academic appraisal of damages in which the jury unquestionably would be impelled to accept the plaintiff's evidence of damages in each case at face value without applying the acid test of credibility. The lower court properly charged that it was the jury's function to determine the severity of plaintiff's injuries; that it was within the jury's power "to cut down" certain charges "because you must give what you think is fair, reasonable and proper." This instruction was correct and apparently the jury did just that. In our view the awarding of new trials in these cases for inadequacy, stem from the lower court's substituted judgment, as to what the verdicts should have been, for that of the jury.

A reversal of the order will reinstate the verdicts. And whether we, in the exercise of our broad statutory authority, should order a new trial, generally, on all issues, is a question which we should approach with great caution. Cf. *Carpenelli v. Scranton Bus Co.*, 350 Pa. 184, 38 A. 2d 44. Here the verdicts were substantial and under all of the circumstances the entry of judgments upon them will be proper. On the question of damages there were serious inconsistencies in the proofs. Moreover Esposito's credibility (a question for the jury and not for the court) was seriously impeached. He was out of work for three months; he testified as to his loss of earnings as a taxi driver at $85 to $90 per week. It was finally developed that with tips his total weekly earnings did not exceed $65 to $70. More serious than the discrepancies as to his loss in wages was the contradiction in Esposito's tes-

timony as to his prior physical condition. He suffered a slipped intervertebral disc from the accident and was in the hospital for a month. On direct examination he testified positively that his prior physical condition was good; that he never had pain in his back and had not been hospitalized previous to the accident. This was not true. Two years earlier he had been treated in St. Francis Hospital for a similar injury to his back and he visited a Dr. Wallace seven times for treatment. The previous injury involved the "nucleus pulposus" between the fourth and fifth lumbar vertebrae and the present injury involved the area between the fifth lumbar and first sacral segments. Esposito not only denied the fact of a former injury before the jury, but he never told Dr. Harold Lefkoe, who treated him for the present injury, about it. Moreover Esposito didn't call Dr. Nicolo who attended him on eleven occasions prior to his treatment by Dr. Lefkoe in St. Joseph's Hospital.

Frumento's evidence concerning his damages likewise was open to question. He was not hospitalized after the accident but stated that he consulted Dr. Nicolo over a 12 day period. This doctor was not called as a witness nor was any bill from him submitted on Frumento's behalf. Frumento claimed that he went to Dr. Lefkoe for treatment a month after the accident and had an x-ray examination at the doctor's instance. So far as the record before us indicates the result of the x-rays was negative. Dr. Lefkoe testified that he did not treat Frumento at all but merely examined him on April 26, 1955 and subsequently on January 20, 1956 at which time Frumento was working regularly; that Frumento's first complaints were pain in the lower back, severe headache, and pain and stiffness of the neck. For his two examinations Dr. Lefkoe submitted a bill of $60. Frumento testified that he

earned $65 a week but he called no witnesses nor submitted any documentary evidence to substantiate his claim that he lost six or seven weeks from his work. While admittedly the $550 verdict returned by the jury in favor of Frumento was only slightly in excess of his claimed out-of-pocket loss it might well have been that the jury rejected at least part of Dr. Lefkoe's $60 bill for two visits, as unreasonable, and discounted Frumento's claim for loss of wages by reason of his failure to substantiate it by additional evidence within his power to produce. Moreover Frumento's failure to call Dr. Nicolo the only physician consulted within a month after the accident undoubtedly tended to minimize the seriousness of Frumento's claim, in the minds of the jury.

In summary it does not appear that the jury's verdicts in either Esposito's or Frumento's case was influenced by partiality, passion or prejudice or by some misconception of the law or the evidence. The verdicts therefore should not have been disturbed.

The judgment in No. 303 is affirmed. The order in Nos. 302 and 304 is reversed and judgments are directed to be entered on the verdicts.