615 A.2d 331

**Floyd E. GOUSE, Appellee,**

**v.**

**Douglas R. CASSEL, M.D., Appellant.**

Supreme Court of Pennsylvania.

Argued May 7, 1991.

Decided Oct. 8, 1992.

Christian S. Erb, Jr., Harrisburg, for appellant.

Howard A. Chajson, Pittsburgh, amicus curiae.

Richard H. Wix, Harrisburg, for appellee.

## OPINION

NIX, Chief Justice.

In this appeal, appellant, Douglas R. Cassel, M.D., seeks review of an Order of the Superior Court reversing the judgment of the Court of Common Pleas of Cumberland

County in favor of appellant and remanding the matter solely for a determination of damages. For the following reasons, we affirm in part, reverse in part and remand the matter to the Cumberland County Court of Common Pleas.

The factual matrix out of which this matter arises is as follows. In October, 1976, Floyd E. Gouse, appellee, sustained injuries when a trailer collapsed on him at work. He was taken to the hospital where appellant performed an examination and discovered a cyst on his spleen. Appellant recommended a splenectomy to which appellee assented. The patient developed a subphrenic abscess resulting from post-operative complications. Appellee remained in the hospital several weeks while the abscess was drained and treated. Appellee was discharged from the hospital five weeks after admission.

Three weeks after appellee's discharge, the abscess and incision wound broke open and continued to drain. Appellant advised appellee that he should see his family physician for additional care. Appellee saw Dr. Milford who admitted him to the hospital for a fistulagram which revealed a subphrenic abscess in the area of the splenectomy. The area was drained and appellee was placed on antibiotics.

Two weeks subsequent to discharge from this hospitalization, appellee experienced severe aching in his calf muscles and was readmitted to the hospital. Appellee was diagnosed and treated for bilateral and deep vein thrombophlebitis. As a result of the complications which followed the surgeries, appellee has been unable to obtain employment.

Appellee commenced this action alleging that his informed consent to the surgery was not obtained, that the surgery was unnecessary, and that the operation and follow-up care were negligently performed. The trial court granted a compulsory non-suit on the negligence claim; however, the issue of informed consent was submitted to the jury. The jury considered the following interrogatories:

1. Was Mr. Gouse advised of those material facts, risks, complications and alternatives to surgery, which a reason-

able man would have considered significant in deciding whether or not to have the operation?

2. If you find that the plaintiff was not advised of those material facts, risks, complications and alternatives to the surgery, do you find that a reasonable man having Mr. Gouse's diagnosis and in Mr. Gouse's condition would have agreed to undergo the operation nevertheless?

*Gouse v. Cassel,* No. 23 Civ.Div.1981, slip op. at 1–2 (Court of Common Pleas of Cumberland County, Oct. 28, 1988). The jury answered the first question negatively and the second affirmatively.

The trial court denied post-trial motions. It determined that to succeed in a cause of action for lack of informed consent, a plaintiff must show "an absence of valid consent, and a determination that a properly advised patient would not, under the circumstances, have had the procedure." *Id.* The trial court further determined the second prong to be objective and not subjective, that is, what the reasonable person, rather than the plaintiff, would have done.

The Superior Court reversed the judgment of the trial court and remanded the case for a trial solely to determine the amount of damages to which Mr. Gouse is entitled. The Superior Court, in finding that it was error for the trial judge to give the second interrogatory to the jury, stated that "it is improper for a trial court to add to the law in Pennsylvania by saying that before a jury can render a verdict for a plaintiff-patient, that plaintiff must show that a reasonable person in his place, having been properly advised by his doctor, would not have consented to surgery." *Gouse v. Cassel,* 385 Pa.Super. 521, 526, 561 A.2d 797, 800 (1989) (citing *Sagala v. Tavares,* 367 Pa.Super. 573, 580, 533 A.2d 165, 169 (1987)). The appellant, Douglas R. Cassel, M.D., filed a petition for allowance of appeal and we granted allocatur. 524 Pa. 608, 569 A.2d 1367 (1989).

The issue on appeal before this Court is whether in an informed consent case, when the surgeon is found to have inadequately explained the risks and complications of the surgery, a causal relationship must exist between the sur-

geon's failure to disclose information and the patient's consent to undergo the surgery. For the reasons that follow, we hold that a physician or surgeon who fails to advise a patient of material facts, risks, complications and alternatives to surgery which a reasonable man in the patient's position would have considered significant in deciding whether to have the operation is liable for damages which ensue, and the patient need not prove that a causal relationship exists between the physician's or surgeon's failure to disclose information and the patient's consent to undergo surgery.

Appellant argues that there must be proof that the patient would not have given his consent to the surgery had the risks and complications been adequately explained. Appellee argues, conversely, that once a determination is made that a physician or surgeon operated without informed consent, the physician or surgeon is liable for damages that occur regardless of whether there was any negligence on his part.

We reject appellant's reasoning that in the area of informed consent a risk is relevant only if its disclosure would result in the patient's refusal of medical treatment.

[W]here a patient is mentally and physically able to consult about his condition, in the absence of an emergency, the consent of the patient is "a prerequisite to a surgical operation by his physician" and an operation without the patient's consent is a technical assault, *Moscicki v. Shor,* 107 Pa.Super. 192, 195, 163 A. 341, 342 (1932); *Dicenzo v. Berg,* 340 Pa. 305, 307, 16 A.2d 15, 16[, and] the burden is on plaintiff to prove "that the operation performed, or substantially that operation, was not authorized by him." *Dicenzo v. Berg,* 340 Pa. at 307, 16 A.2d at 16.

*Smith v. Yohe,* 412 Pa. 94, 106, 194 A.2d 167, 174 (1963).

Subsequently, in *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966), this Court defined the scope of "consent" as necessarily requiring "informed consent."

"[S]ince the agreement between the physician and his patient is contractual in nature, for there to be a valid consent it must be clear that both parties understand the nature of the undertaking and what the possible as well as expected

results might be.... [I]t will be no defense for a surgeon to prove that the patient had given his consent, if the consent was not given with a true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results."

*Id.* at 166, 223 A.2d at 674 (quoting Robert E. Powell, *Consent to Operative Procedures,* 21 Md.L.Rev. 189 (1961)). Additionally, "where a physician or surgeon can ascertain in advance of an operation alternative situations and no emergency exists, a patient should be informed of the alternative possibilities and given a chance to decide before the doctor proceeds with the operation." *Id.* at 157, 223 A.2d at 670 (quoting *Bang v. Charles T. Miller Hospital,* 251 Minn. 427, 88 N.W.2d 186 (1958)).

■ We do not believe that requiring physicians and surgeons to communicate material facts, risks, complications and alternatives to their patients creates an unduly burdensome requirement. A physician or surgeon need not disclose all known information; however, the physician or surgeon is required to advise the patient of those material facts, risks, complications and alternatives to surgery that a *reasonable person* in the patient's situation would consider significant in deciding whether to have the operation. Thus, the patient is assured that he will be provided with "all the material facts from which he can make an intelligent choice as to his course of treatment, *regardless of whether he in fact chooses rationally.*" *Cooper v. Roberts,* 220 Pa.Super. 260, 266, 286 A.2d 647, 650 (1971) (emphasis added) (footnote omitted) (citing *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966) and *Dunham v. Wright,* 423 F.2d 940 (3d Cir.1970)).

■ It is argued, to the contrary, that it is fundamentally unfair for a physician to be subject to liability for the negligent failure to apprise a patient of information that would not have changed the outcome of the patient's decision. However, we find the standard stated herein to be an equitable balance between the competent patient's right to medical self-determination and the need to alleviate the requirement that the

physician or surgeon disclose every risk to the patient for fear that the physician or surgeon will be liable for battery. The patient alleging that the insignificant, unrevealed factor is significant in making a determination will not recover damages. Conversely, the physician or surgeon alleging that a significant risk is insignificant will be liable for any damages that ensue.

Appellant further submits that the Superior Court erred when it made no distinction between a case where there is no consent and a case where there is no informed consent. As previously stated, however, this Court defined the scope of "consent" as necessarily requiring "informed consent." *See Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966). Lack of informed consent is the legal equivalent to no consent; thus, the physician or surgeon who operates without his patient's informed consent is liable for damages which occur, notwithstanding the care exercised. Because a patient must be advised of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation to give informed consent, the Superior Court appropriately made no distinction between consent and informed consent cases.

Instantly, the patient, appellee, demonstrated, and the jury found, that he was not advised of those material facts, risks, complications and alternatives to surgery which a reasonable man would have considered significant in deciding whether to have the operation. At this point, the causation inquiry ends. The sole issue remaining was a determination of damages. In this matter, the jury was improperly instructed on legal causation. Therefore the Superior Court correctly "refuse[d] to eviscerate the doctrine of informed consent by predicating materiality and, thus, the mandate for disclosure of risks and alternatives, upon a factfinder's determination that a plaintiff-patient would have declined treatment had the disclosures been made." *Gouse v. Cassel*, 385 Pa.Super. 521, 526, 561 A.2d 797, 800 (1989).

Appellant also argues that the ruling on legal causation by the Superior Court in this case is contrary to conclusions reached by appellate courts in jurisdictions elsewhere in the United States. However, the cases presented by appellant are not binding on this Court. Appellant has failed to convince this Court that we should abrogate the policy that a competent adult citizen should have the right to medical self-determination, regardless of whether the patient chooses rationally.[1]

Although we affirm the reasoning of the Superior Court in this matter, nonetheless, this Court finds that a new trial is warranted.[2] Grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case. *Anzelone v. Jesperson*, 436 Pa. 28, 258 A.2d 510 (1969); *Chesko v. Steinbaugh*, 434 Pa. 82, 252 A.2d 644 (1969). The Superior Court correctly decided that it was an error of law for the second interrogatory to be sent to the jury. As a result, the Superior Court disregarded the second interrogatory, granted judgment for the appellee and remanded the case to the trial court solely to determine damages. We find that the Superior Court improperly determined that the outcome of the trial without the second interrogatory would have been a judgment for the appellee, with only the amount of damages in question. The Superior Court should have vacated the entire verdict and granted a new trial without limitation because the standard of law presented to the jury was erroneous.

In making the determination to grant judgment for the appellee, the Superior Court failed to comply with the standard it set forth in *Lambert v. Pittsburgh Bridge and Iron*

1. The third issue raised by appellant is whether the jury uses an objective ("reasonable person") or subjective standard when determining legal causation. Since we find that the Superior Court correctly determined that it was error for the trial judge to give any instruction on causation, we do not address appellant's third issue.

2. The fourth issue raised by appellant is, if this Court decides causation is not a required element of proof, whether a new trial on liability is warranted where irrelevant and prejudicial evidence was introduced at trial. However, because we find that a new trial is necessary for other reasons, we do not address appellant's fourth issue.

*Works,* 227 Pa.Super. 50, 323 A.2d 107 (1974), *aff'd,* 463 Pa. 237, 344 A.2d 810 (1975).

> Where the trial court instructs the jury on the controlling law ... it must be assumed that the jury resolved the evidence on the basis of said law, and not on any other theory. If the jury is instructed to apply a standard of law or conduct which appears patently inapplicable to the facts in the record, judgment must be reversed and a new trial granted.

*Id.* 227 Pa.Super. at 56, 344 A.2d at 110. In this case, there was no causation issue; consequently, any jury instruction regarding causation was "patently inapplicable to the facts in the record...." *Id.* Therefore, "judgment must be reversed and a new trial granted." *Id.*

Accordingly, we affirm in part, reverse in part and remand to the Court of Common Pleas of Cumberland County for a new trial.

LARSEN and McDERMOTT, JJ., did not participate in the consideration or decision of this case.